IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC 22-180 |
| | * | |
| ANTIONE WILLIAM TUCKSON, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | ****** | |

## GOVERNMENT'S DETENTION MEMORANDUM

Defendant Antione Tuckson is scheduled to appear before the Court on May 20, 2022, at 3:00 p.m. for an initial appearance on an indictment charging him with impersonating a federal officer, in violation of 18 U.S.C. § 912, and unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The government respectfully submits this memorandum in support of an order of detention because the Defendant poses a danger to the community and is a flight risk.

## BACKGROUND

Mr. Tuckson has a criminal history involving multiple felony convictions and violations of supervised release stretching back more than a decade that includes charges related to fraud, firearms offenses, and impersonating a law enforcement officer. More recently, since in or around December 2020, the Defendant has used the registered trademark "USMS Special Services," along with police-style vehicles, weapons, a forged MVA record, a fake identification card and badge, a trained "bite dog," and other law enforcement gear to pose as a Deputy United States Marshal.

On March 6, 2022, while working as an armed security guard with a canine companion at a restaurant in Prince George's County, Maryland, Mr. Tuckson attempted to detain two patrons

1

who had disputed their bill.  He then falsely identified himself repeatedly as a Deputy United States Marshal to Prince George's County police officers ("PGPD") in a failed attempt to justify his unlawful possession of a firearm.  Mr. Tuckson went further in trying to maintain this false impersonation when confronted by PGPD officers as to his status as a federal officer.  For example, he had a co-conspirator pose as his United States Marshals Service supervisor when PGPD sought to contact his supervisor to verify his claims.  Police arrested Mr. Tuckson and recovered a loaded Glock Model 19, 9mm firearm from his hip during the search incident to his arrest.

## **LEGAL STANDARD**

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3156, provides that, in general, a court "shall order" a defendant's pretrial release unless the court determines that the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  The Bail Reform Act requires that the Court hold a detention hearing upon a motion of an attorney for the government where, as here, the case involves any felony that involves the possession or use of a firearm.  18 U.S.C. § 3142(f)(1)(E).

Whether detention is sought on the bases of flight or dangerousness, the Bail Reform Act lists several factors to be considered in the detention analysis.  The factors that are applicable to the Defendant include the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the defendant's criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  *See* 18 U.S.C. § 3142(g); *see also United States v. Snyder*, No. CR 19-20828, 2020 WL 428353, at *1 (E.D. Mich. Jan. 28, 2020) (ordering pretrial detention for impersonation of law enforcement because,

among other reasons, the defendant had a history falsely claiming to be law enforcement and lied to law enforcement officials).

## THE DEFENDANT POSES A SERIOUS DANGER TO THE COMMUNITY AND RISK OF FLIGHT

For the reasons set forth below, the Defendant would pose a danger to the community and a risk of flight if released pending trial, such that no combination of bail conditions would ensure the safety of the community and the defendant's continued appearance before the Court. An order of detention should therefore be entered.

### A. *Seriousness of the Charges*

First, the charged conduct is very serious. In early 2022, the Defendant impersonated a Deputy United States Marshal to secure employment as an armed security guard at a restaurant in Prince George's County. On March 6, 2022, Mr. Tuckson posed as a Deputy United States Marshal while working as armed security at the restaurant. On that date Mr. Tuckson was carrying a firearm, handcuffs, a taser, and other police gear and was accompanied by a dog wearing a police-style vest. After two women disputed their bill, Mr. Tuckson attempted to detain them under false pretenses and pursued them when they fled the restaurant. Mr. Tuckson even contacted PGPD for assistance. The Defendant encountered responding PGPD officers in a residential area down the road from the restaurant. When interviewed by the officers who arrived on the scene, Tuckson displayed his fake badge and falsely identified himself as a Deputy United States Marshal.

PGPD officers who had responded to the restaurant noticed that Mr. Tuckson had left his dog there. Recognizing that an on-duty canine never leaves the assigned officer's side, PGPD police began investigating Tuckson's claim that he was a Deputy United States Marshal. In response to requests by PGPD officers, Tuckson falsely claimed to be a sworn law enforcement

3

officer and again showed PGPD officers a fake identification card and badge.  He also had a co-conspirator falsely identify as a Deputy United States Marshal (and Mr. Tuckson's supervisor) to PGPD officers after calling that co-conspirator on his phone.  Police arrested Mr. Tuckson and recovered a loaded Glock Model 19, 9mm firearm from his hip.  Exhibit A includes pictures of evidence recovered following the arrest.  USMS personnel searched its databases and found no record that Mr. Tuckson was a Deputy United States Marshal or otherwise an employee of the United States Marshals Service.

      Mr. Tuckson faces up to 10 years imprisonment for his unlawful possession of a firearm.  Mr. Tuckson's sophisticated scheme, his willingness to use force against others under color of law, and his brazen lies to law enforcement underscore the danger he poses to the community and the risk of future nonappearance.

      Notably, evidence shows that Mr. Tuckson has been impersonating a law enforcement officer for more than fifteen years and has not stopped despite his lengthy criminal record and multiple prison sentences.  Mr. Tuckson was first charged with impersonating a law enforcement officer in Charleston, West Virginia in 2006.  The charges were dropped.  Three years later, Mr. Tuckson was arrested in the District of Columbia on charges related to impersonating a police officer.  *See Tuckson v. United States*, 77 A.3d 357, 359 (D.C. 2013); *see also Tuckson v. Federal Bureau of Prisons*, 729 F.Supp. 2d 122 (D.D.C. July 29, 2010).  Although the case was ultimately overturned on appeal on a motion to suppress evidence, Mr. Tuckson was initially arrested in that case because police believed he was impersonating an officer.  *See Tuckson*, 77 A.3d at 359.  Specifically, when police encountered Mr. Tuckson, he was driving a Chevy Impala "outfitted with dark windows, long antennas, a 'police-stye dash light,' and other features that made it appear to be 'an undercover or unmarked police vehicle.'"  *Id.* at 358.  When police

questioned Mr. Tuckson, he denied that he was an officer and falsely told police that he did not have a gun. *Id.* at 359. During a subsequent window tint check, an officer noticed a collapsible baton in the car, and Tuckson was placed under arrest. *Id*. Police found a "loaded semi-automatic pistol, 'police handcuffs, and an extra magazine'" in the car. *Id*. Undeterred, Mr. Tuckson's impersonations grew more brazen over time. Remarkably, an Incident Report from the Charles County Sheriff's Office date December 27, 2018, indicates that on that day, Tuckson interfered in an ongoing robbery, representing himself to be a U.S. Marshal to the victim and police. *See* Exhibit B, excerpts of Charles County Sheriff Offense/Incident Report.

Mr. Tuckson's efforts to impersonate law enforcement have become more sophisticated in recent years. In late 2020, the Defendant registered the trademark "USMS Special Services" with the State of Maryland Department of Assessments and Taxation, in furtherance of his impersonation of a Deputy United States Marshal. *See* Exhibit C. He thereafter registered multiple vehicles in the name USMS Special Services. Two of the vehicles are equipped with red and blue flashing lights. During a search of one of these vehicles incident to his arrest, PGPD police found a document entitled Maryland Motor Vehicle Administration Application for Approval of Emergency/Non-Emergency or Service Vehicles, which purported to register two of the cars as emergency vehicles in the state of Maryland, and appears to have been signed by an MVA official on January 21, 2021.[1] The government's investigation indicates the MVA Administrator's signature on the document is forged. *See* Exhibit E. Mr. Tuckson's fake U.S. Marshals identification card had an embedded computer chip to resemble DOJ-issued PIV cards.

---

[1] Attached as Exhibit D is a photo of one of Tuckson's law-enforcement style vehicles registered to USMS Special Services, and the "bite dog" that Tuckson used on March 6, 2022.

5

Evidence found in his home this morning during the execution of a search warrant also weighs heavily in favor of detention. Mr. Tuckson is currently on pretrial release on state charges relating to his impersonation of a law enforcement officer on March 6, 2022. At 6:00 a.m. today, federal law enforcement officers executed a search warrant at Tuckson's home. During a search of the home, law enforcement officers found multiple firearms, including: (1) a .40 caliber Glock handgun; (2) an AR-style rifle with a scope, and (3) a 12-gauge, pump-action Stevens Shotgun with a pistol grip. *See* Exhibit I. Law enforcement also found a printer for making identification cards and blank, white identification cards with computer chips embedded in the plastic (appearing to resemble U.S. government employee identification cards), as well as body armor and a sophisticated security system.

### B. Weight of the Evidence

The evidence against the Defendant is overwhelming. Records from the Maryland Department of Assessments and Taxation and the Maryland Motor Vehicle Administration show that Tuckson registered the trademark "USMS Special Services" on or about December 23, 2020, and registered multiple vehicles in that name. Moreover, much of the events of March 6, 2022, are captured on body camera footage, which clearly shows, among other things: (1) Tuckson repeatedly claiming to be a Deputy U.S. Marshal; (2) an argument with Tuckson and one of the women he attempted to detain; (3) Tuckson presenting a fake U.S. Marshals badge to PGPD; (4) the fake identification card Tuckson provided to PGPD; (5) PGPD's call with Tuckson's co-conspirator, who impersonated a supervisory Deputy United States Marshal and falsely claimed that Tuckson was a Deputy U.S. Marshal; and (6) Tuckson admitting that he was carrying a firearm, which was recovered from his hip during the search incident to the arrest. Multiple witnesses can testify about Tuckson's false impersonation and unlawful possession of

the pistol. Moreover, the Defendant has multiple felony convictions. *See Tuckson v. Federal Bureau of Prisons*, 729 F.Supp. 2d 122 (D.D.C. July 29, 2010).

### C. Defendant Antione Tuckson's Criminal History

The Defendant's lengthy criminal history, which includes charges related to fraud, impersonation, and firearms offenses, weighs in favor of detention. Mr. Tuckson has multiple felony convictions in the District of Columbia and a misdemeanor conviction in the State of Maryland for which he was sentenced to three years imprisonment, with all but six months suspended. Mr. Tuckson has also had his probation/supervised release revoked twice because of his repeated criminal conduct, and is therefore not a suitable candidate for pretrial supervision pending trial.

Tuckson's criminal history includes the following:

- On or about December 5, 2005, Tuckson pled guilty to unauthorized use of a motor vehicle in the Circuit Court for Prince George's County, Maryland. *See* Case No. CT051550X. The defendant was sentenced to three years imprisonment, with all but six months suspended.

- In 2005, Tuckson was also charged with and convicted of receiving stolen property and unauthorized use of a vehicle. Case No. 2005 FEL 1091 (D.C. Super Ct.). On July 9, 2007, the Defendant's probation was revoked, and he was sentenced to 15 months' imprisonment in the case. *See Tuckson*, 729 F. Supp. 2d at 123.

- On July 6, 2007, Tuckson was convicted of carrying a pistol without a license and sentenced to 14 months' imprisonment. Case No. 2007 CF2 2872 (D.C. Super. Ct. July 6, 2007); *Tuckson*, 729 F. Supp. 2d at 123.

- On August 24, 2009, Tuckson was sentenced to 16 months' imprisonment for first degree theft. Case No. 2009 CF2 12319 (D.C. Super. Ct. August 24, 2009); *Tuckson*, 729 F. Supp. 2d at 124.

- On October 1, 2009, the D.C. Parole Commission revoked petitioner's supervised release in the 2005 and 2007 cases based on his arrest for first degree theft earlier in 2009, and imposed a 10-month term of imprisonment. *Id.*

A noted above, the Defendant has also been charged for conduct relating to impersonating a law enforcement officer on multiple prior occasions but has nonetheless grown bolder and more sophisticated in his impersonation of law enforcement.

### D. *Evidence from Mr. Tuckson's Cellular Telephones Underscores his Dangerousness and Ability to Flee.*

Evidence recovered from a search of the Defendant's cellular telephones, which were seized by PGPD at the time of his March arrest, underscores the danger he poses to the community based on his access to firearms and improper use of force to detain individuals under color of authority. A photograph of a pile of cash further shows that the Defendant is a risk of flight.

The Defendant's phones contained the following evidence: (1) photographs of a revolver that has not been recovered by police; (2) Tuckson holding an assault rifle at a gun range; *see* Exhibit F; (3) a photograph of an individual handcuffed on the sidewalk, who a witness said was detained by Tuckson after he identified himself as a Deputy United States Marshal and tackled the individual to the ground, *see* Exhibit G; and (4) an image of a large amount of $100 dollar bills spread on a table next to a black safe and a Glock gun case, *see* Exhibit H.

### CONCLUSION

For the reasons set forth above, as well as those contained in the report presented by the Pre-Trial Services Unit, the government respectfully submits that no condition or combination of conditions will protect the community or ensure the Defendant's return to court, and therefore requests that the Defendant be ordered detained pending trial.

        Respectfully submitted,

        Erek L. Barron
        United States Attorney

By:   /s/_____
        Peter L. Cooch
        Special Assistant United States Attorney
        Timothy F. Hagan
        Assistant United States Attorney

        United States Attorney's Office
         for the District of Maryland
        6406 Ivy Lane, Suite 800
        Greenbelt, Maryland 20770

## CERTIFICATE OF SERVICE

 I hereby certify that on the 20th day of May, 2022, the foregoing motion was filed electronically and thus served upon defense counsel.

        _____/s/_____
        Peter L. Cooch
        Special Assistant United States Attorney